## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH BELLOMO<br>7 Carney Road<br>Kregeville, PA 18333 | :<br>:<br>: CIVIL ACTION<br>: |
| Plaintiff, | : No. _____ |
| v. | : |
| | : |
| CITY OF BETHLEHEM<br>10 East Church Street<br>Bethlehem, PA 18018 | :<br>: **JURY TRIAL DEMANDED**<br>: |
| Defendant. | :<br>: |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.    This action has been initiated by Joseph Bellomo (hereinafter referred to as "Plaintiff," unless indicated otherwise) against the City of Bethlehem (hereinafter referred to as "Defendant" unless indicated otherwise) for violations of the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601 *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes.  He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue letter under the ADA.  Plaintiff's PHRA claims however will mirror identically his federal claims under the ADA.

## JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a) (4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.     This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4.     Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

## PARTIES

5.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.     Plaintiff is an adult individual, with an address as set forth in the caption.

7.     The City of Bethlehem ("Defendant") is a municipality in the Commonwealth of Pennsylvania comprised of approximately 75,000 people, straddles Northampton and Lehigh Counties, and is headquartered at the above-captioned address.

8.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.    Plaintiff was hired by Defendant in or about late June of 2002; and in total, Plaintiff was employed with Defendant for approximately 15 years.

11.    During the course and scope of Plaintiff's employment, he continually worked on a full-time basis. And he was employed during his tenure as a Certified (Water Treatment) Operator at Defendant's Water Filtration Plant (although his level of classification(s) changed over time in the same general position).

12.    Toward the end of Plaintiff's employment (and at all relevant times underlying Plaintiff's legal claims), he worked for Defendant on its mid-shift, 4:00 PM to 12:00 AM.

13.    In his role and on the mid-shift, Plaintiff was considered to be directly supervised by Steve Brown (Defendant's Water Treatment Plant Operations Supervisor). Dan Becker was also a maintenance supervisor within the facility wherein Plaintiff was employed. Brown and Becker were primarily the only supervisory staff within Plaintiff's facility separate and apart from operators shifts worked by Plaintiff.

14.    Plaintiff has and continues to suffer from various health problems, which include but are not limited to, Bi-Polar Disorder, Hyper Activity Disorder, Insomnia, depression, anxiety and other related complications and conditions. Plaintiff has treated medically for a very long time

3

(in excess of 10 years) due to such health problems, and at times, they have limited his ability to work (during flare-ups) as well as other life activities.

15.     In early 2017, Plaintiff discussed with Defendant's management his health problems and had also required intermittent days off from work for medical reasons (predominantly in the January-February timeframe).

16.     On or about April 28, 2017 (separate from past intermittent time off), Plaintiff required a block medical leave. Plaintiff provided Defendant's management with a medical note dated April 28, 2017 verifying his need for a medical leave. *See* 4/28/17 medical note, attached hereto as "Exhibit A."

17.     On or about May 21, 2017, Plaintiff was released to return to work by his physicians without any medical restrictions specified or needed. *See* 5/21/17 medical note, attached hereto as "Exhibit B."

18.     On or about May 22, 2017, Plaintiff resumed work without issue and performed his job in a manner consistent with all expectations of his role.

19.     On or about May 23, 2017, Plaintiff was left a telephone voicemail not to come to work until he contacts Defendant's management.  In his follow-up discussion with Defendant's management, Plaintiff was instructed he was not being permitted to return to work any longer because his note did not specifically say he had "no restrictions."

20.     On May 24, 2017, Plaintiff was mailed a letter while directed to remain out of work involuntarily by Michelle Cichocki, Director of Human Resources.  The letter stated in pertinent part: (a) Defendant was aware Plaintiff had been out of work for medical reasons since April 28, 2017; (b) to return he must be released for "full duty;" and (c) that Plaintiff could only apply for

leave under the Family and Medical Leave Act ("FMLA") *once he exhausts his paid leave and sick days.*

21.     As of May 24, 2017, Defendant, in large part at the direction of Cichocki, had *repeatedly violated* the FMLA and exhibited a very poor level of medical leave administration. More specifically:

(1) For many months, Defendant was aware Plaintiff required intermittent medical leave and then separately block medical leave in April of 2017. Defendant was obligated to – within 5 days - notify Plaintiff in writing through individualized written notifications of his FMLA rights, his FMLA designations, and FMLA obligations (if any). Defendant failed to:

- provide Plaintiff with required written eligibility notifications of his FMLA rights within 5 days from him taking intermittent or block medical leave from January through May of 2017;[2]

- provide Plaintiff with written FMLA designation notices within 5 days from him taking intermittent or block medical leave from January through May of 2017;[3]

- provide Plaintiff with required written rights and responsibilities notices within 5 days him taking intermittent or block medical leave from January through May of 2017;[4] and

- provide written FMLA designation notices for a leave.[5]

Anytime an employer is on notice of an employee's need for intermittent or block leave that may qualify for FMLA coverage, the above obligations are triggered. Defendant *knowingly and intentionally failed to follow these legal obligations. See* 29 CFR § 825.300(b)

(2) An employer is not permitted to condition FMLA protections or designation of leave only *following the exhaustion of sick leave* or other types of paid leave. In its May 24, 2017 correspondence, Defendant has conceded violating the FMLA by not offering it under FMLA-eligible circumstances and instead mandating Plaintiff to use other leave first. That is a blatant violation of the FMLA, separate and part from Defendant's above written notification failures.

---

[2] *See* 29 CFR § 825.300(b)(1).
[3] *See* 29 CFR § 825.300(b)(2).
[4] *See* 29 CFR § 825.300(c)(1)(i)-(vii)
[5] *See* 29 CFR § 825.300(d)(1)-(6)

*See* 29 C.F.R. 825.207 (an employer can only choose whether or not to require the usage of sick time "concurrently" with FMLA coverage;[6] *see also Wilson v. Kuhn's Quality Foods*, 2006 WL 2709384, at \*7 (W.D. Pa. 2006)(an employer's sick leave policy shall never diminish FMLA obligations or protections).

(3) Defendant also violated the FMLA by refusing to permit Plaintiff to continue working after he provided medical clearance on May 21, 2017. Defendant was only permitted to require additional medical documentation or any type of fitness-for-duty documentation under the FMLA **if** it made this requirement known *at the time* Plaintiff commenced an FMLA-qualifying medical leave.[7]

22.   Plaintiff's absences intermittently in January and February were FMLA-qualifying. Plaintiff's block leave commencing in April of 2017 was FMLA qualifying. Defendant thus: (1) failed to provide Plaintiff with FMLA notifications and entitlements for months leading up to May 2017 (and concede it did not even do so until July of 2017, discussed *infra*); (2) illegally mandated Plaintiff to use sick time before offering him federally-protected leave entitlements under the FMLA; and (3) required additional fitness-for-duty medical documentation of Plaintiff improperly without giving Plaintiff adequate individualized notifications of such a need at commencement of the leave (as mandated by the FMLA).[8]

---

[6] *See also* US DOL Opinion Letter at https://www.dol.gov/WHD/opinion/FMLA/2003_12_17_5_FMLA.pdf.

[7] *See e.g.* 29 C.F.R. § 825.312(a)(if an employer intends to mandate fitness-for-duty documentation, it must be provided in a designation notice within 5 days of the FMLA-qualifying leave commencing). This gives the employee the entire leave to obtain such documentation. Otherwise employers - across the board - would be violating mandatory rights if *immediate* reinstatement under the FMLA by blindsiding the employees with additional requirements only upon attempting to return when it could take days, weeks or months to schedule follow up medical appointments to get such additional medical documentation. Relying on Third Circuit jurisprudence and other extensive case law, the Court in *Reyes v. Phoenix Beverages, Inc.*, 207 F. Supp. 3d 206, 222–23 (E.D.N.Y. 2016), explained the failure of an employer to give any written expectations within 5 days of taking an FMLA-qualifying medical leave prohibits it from requesting additional clarifying documentation once a plaintiff is cleared and medically attempts to return to work.

[8] It constitutes interference to prevent or discourage an employee from using their FMLA entitlement. 29 C.F.R. § 825.220(b); *see also e.g. Grosso v. Fed. Exp. Corp.*, 467 F. Supp. 2d 449, 464 (E.D. Pa. 2006).

23.     As of June 1, 2017, Plaintiff had been able to schedule appointments with his medical personnel wherein he thereafter provided Defendant's management with:

> (1) a new note dated 6/1/17 from his medical doctor identifying he was released to return to work "full duty" effective May 26, 2017 (*see* "Exhibit C"); and
>
> (2) a new note dated 6/1/17 from his psychiatrist identifying he was "released to return to work, full duty, and with no restrictions, effective May 26, 2017." *See* "Exhibit D."

24.     Because Plaintiff was missing time from work and disclosing his health problems, Plaintiff was experiencing significant mistreatment and animosity from Becker and Brown (the supervisory staff in his facility).  They were being extremely mean to him, almost to the point of abusing him on the account of their dislike for his health complications. This contributed to Plaintiff being improperly delayed in his return to work with refusals to accept his initial medical clearance.

25.     Plaintiff in fact returned to work in early June of 2017, but Becker and Brown continued being extremely condescending to him.  As a result, Plaintiff expressed concerns of discriminatory treatment for his health needs to Defendant and filed a grievance through his union in mid-June 2017. At this time, Plaintiff also sought additional medical leave because the treatment he was experiencing at work by his managers discriminating against him was exacerbating the same disabilities for which he was simultaneously treating.

26.     Plaintiff's last physical day of work for Defendant was during the first half of June 2017, as he informed Defendant's management of his need for additional medical leave.

27.     On or about June 28, 2017, Plaintiff filed a claim with Defendant for worker's compensation because his disabilities were being exacerbated by his manager's derogatory

treatment of him and separately based upon Defendant's failure to address his concerns and grievance about his managers mistreating him.

28.     On or about July 6, 2017, Defendant's own Workplace Employee Assistance Program ("EAP") evaluating Plaintiff medically memorialized for Defendant that: (a) Plaintiff was "mandated to counseling by his employer;" (b) he was required to sign medical releases; (c) Plaintiff does not want to return to work too early in relation to his treatment because he is worried about his "temper;" (d) Plaintiff was "pleasant and cooperative" . . . "kind and gentle" and has another follow-up appointment with Plaintiff on July 14, 2017 (although Plaintiff was instead terminated on July 14, 2017).

29.     Prior to July of 2017, Plaintiff had performed his job in a very satisfactory manner, did not have a history of progressive discipline, and he had not been disciplined for being dangerous or making threats in the workplace. Plaintiff had a very solid performance record prior to July of 2017.

30.     On or about July 7, 2017, Plaintiff was contacted via telephone by Irma Bullard (in the late afternoon). Bullard is a third-party worker's compensation representative, employed through PMA. Bullard has extensively worked with Defendant's management on handling health matters, liability issues, and worker's compensation claim processing for Defendant. Bullard also coordinated with Defendant on denying Plaintiff's worker's compensation claim and discussed Plaintiff's health conditions with Defendant's own management.

31.     Prior to July 7, 2017, Bullard and Swett (Defendant's Safety Supervisor) had significant discussions about Plaintiff, concerns with his mental status, and perceptions of him possibly being a danger in the workplace. By way of examples:

- Swett testified under oath to the Department of Labor that Plaintiff's worker's compensation claim was denied due to it being a preexisting

condition, further elaborating that "he apparently has a preexisting mental health history;"[9] and

- Swett testified under oath to the Department of Labor she was aware of Plaintiff's "mental health issues" because Bullard shared medical information that Plaintiff reported to PMW including his personal and medical history.[10]

32. Thus, prior to July 7, 2017, Defendant's management already had negative perceptions of Plaintiff's health problems and believed him to be a danger despite no factual basis for such illegal and discriminator perceptions. This is in addition to the impropriety of disclosures made amongst said individuals.

33. During the conversation on July 7, 2017 between Plaintiff and Bullard, Plaintiff informed his worker's compensation claim was being denied. Plaintiff specifically expressed to Bullard that he was upset, getting mental health treatment, treating for manic episodes, depression and anxiety, he needed more time to treat for his health and anger issues, and that if he were forced to return earlier to work, the company would be liable (solely in reference to his continued deterioration). Plaintiff did not harass or threaten Bullard (although his termination by Defendant was allegedly in part based upon him threatening Bullard).

34. Shortly after Plaintiff spoke with Bullard (in a matter of minutes), Plaintiff was then immediately contacted by Jennifer Swett (Safety, Wellness and Training Coordinator for Defendant). Swett, having conversed with Bullard previously, told Plaintiff because his worker's compensation claim was denied he had to apply for FMLA leave. Plaintiff told Swett, just as he similarly had told Bullard, he needs medical assistance, a longer leave, specified treatment he was

---

[9] Unemployment Transcript, at p. 7.

[10] *Id.*

receiving, and complained nothing was done about his grievance and discrimination complaints concerning his immediate management. Plaintiff did not harass or threaten Swett (although his termination by Defendant was allegedly in part based upon him having a threatening or harassing tone with Swett).

35.     Despite that Plaintiff had used intermittent medical leave in early 2017 and block medical leave multiple times from April through July of 2017, the first time Plaintiff was ever mailed FMLA documentation including information related to his "eligibility and rights" was on July 7, 2017. Defendant repeatedly violated the FMLA by failing to recognize that PTO, sick time, disability insurance or worker's compensation are merely forms of potential or actual compensation that run coextensively or coterminously with FMLA protection (and FLMA obligations on the part of an employer).

36.     On July 11, 2017, Swett prepared a writing to Cichocki expressing that Plaintiff was threatening days earlier in her July 7, 2017 telephone call identifying she feels uneasy with "knowing some of [Plaintiff's] mental health issues and episodes of his violent behavior in the past."

37.     Plaintiff was mailed a letter by Cichocki dated July 14, 2017 for a meeting *on the very same day*, July 14, 2017, indicating his threats to her and Bullard "may result in a recommendation of termination." It was obvious under the circumstances Defendant had every intent to terminate Plaintiff prior to July 14, 2017 irrespective of any potential input by Plaintiff at this meeting. Plaintiff was also advised he was not permitted to work as of this time even had he been able to return to work by Defendant's management.

38.     This July 14, 2017 letter scheduled a meeting on the exact same day at 11:00 AM at City Hall. Plaintiff never received the mailed letter *prior to* the meeting. He had no

understanding of what the meeting was about; and instead, thought the meeting may be to address his concerns grievances and discrimination concerns. Instead, Plaintiff had only been informed by Cichocki the meeting was to "discuss some issues" via a telephone call within the 2 days prior to the meeting. This notification was left for Plaintiff via voicemail.

39.     *Immediately after* the July 14, 2017 meeting, Plaintiff was sent a presumably pre-drafted termination letter also bearing the same date of July 14, 2017 for violations of Defendant's policies prohibiting violence, harassment and threats in a workplace.

40.     Shortly after Plaintiff walked out of the meeting on July 14, 2017 with Defendant's management (a meeting that was nothing short of a formality), Defendant disseminated a completely defamatory e-mail about and concerning Plaintiff stating: "[h]e has exhibited threatening and abusive behavior to a number of people recently. He has a history of violent outbursts and he has a concealed carry permit and is known to carry a weapon in his vehicle." The e-mail continued by disallowing Plaintiff access, warnings to call 911, and indicated falsely that Plaintiff was some type of public danger.

41.     Defendant's conduct of requiring Plaintiff to attend a meeting *during his FMLA-qualifying leave* with minimal verbal notice of the meeting taking place and without any dialogue on the details of the meeting was objectively outrageous. Defendant's conduct was particularly callous and egregious additionally when it was requiring Plaintiff to participate in the meeting while he was undergoing medical treatment and psychiatric care for his emotions, ability to communicate, anger issues, and other problems.

42.     Plaintiff's termination was flagrantly discriminatory via direct-evidence, as:

> (1) He was terminated based upon Defendant's *admitted* and well-documented *perceptions* of him being a danger based upon his known mental health medical treatment; and

11

(2) Plaintiff was **on** a medical leave. Plaintiff was merely vocalizing to Defendant's worker's compensation representative and human resources personnel that he is treating for anger, anxiety, and other health problems preventing him from returning to work.  Defendant literally terminated Plaintiff *for identifying the reasons for which he was in need of additional medical leave and the very reasons he was treating with mental health professionals,* claiming his disclosures were "threatening."[11]

43.     Knowing Plaintiff was getting medical treatment for numerous disorder, manic episodes and his feelings, Defendant also never once subjected Plaintiff to an independent medical examination or a fitness-for-duty evaluation before substituting its unlawful discriminatory perceptions that Plaintiff was a danger or intended to threaten anyone.

44.     Plaintiff has never been adjudicated unable to work, had medical clearance to work, was treated for the same mental health conditions for at least a decade, and did not have any history of workplace threats.  Plaintiff also has a license to carry a concealed weapon and properly turned in his concealed weapon when he appeared at City Hall for his termination meeting.  Defendant nonetheless gratuitously added to Plaintiff's termination letter that was already pre-planned that an additional concern with Plaintiff was him possessing a concealed weapon, as if to buttress false and discriminatory perceptions of him.

45.     Despite Plaintiff's concerns of discriminatory treatment verbally and in writing, Defendant's management never once identified any investigation or sought to resolve such concerns with Plaintiff directly in over a month prior to Plaintiff's discriminatory and retaliatory termination from employment.

---

[11] Defendant's conduct is *per se* illegal and discriminatory. If every time an employee disclosed hatred, anger, hostility, delusions or other reasons they were getting medical treatment an employer were permitted to say the employee constitutes a workplace threat, the ADA and FMLA would be rendered superfluous.

## COUNT I
### Violations of the Americans with Disabilities Act ("ADA")
### (Discrimination & Retaliation)

46.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47.     Plaintiff timely filed a Charge and received a notice of right-to-sue from the EEOC, thus properly exhausting his administrative remedies to proceed herein (by also timely filing the instant lawsuit).

48.     Plaintiff was: (1) improperly kept out of work on several occasions for discriminatory reasons; (2) subjected to improper disclosures of health information to, from and amongst Defendant and a third-party; and (3) he was ultimately terminated due to actual, perceived and/or his record-of impairments for fabricated, exaggerated and pretextual reasons.

49.     Defendant also failed to engage in interactive processes with Plaintiff about his medical needs, failed to accommodate him by addressing issues in the workplace exacerbating his health problems, failed to address his concerns of discrimination, and retaliated against him for requested accommodations and complaints of discrimination by taking actions referenced throughout this Complaint.

50.     These actions as aforesaid constitute violations of the ADA.

## COUNT II
### Violations of the Family and Medical Leave Act ("FMLA")
### (Interference and Retaliation

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.    Plaintiff was an eligible employee in all respects to receive FMLA coverage for any types of leave authorized under the FMLA, including intermittent, reduced-schedule or block leave.

53.    Defendant repeatedly failed to follow FMLA regulations, placed burdens upon Plaintiff not permitted under the FMLA, failed to immediately reinstate him upon receipt of medical clearance, knowingly dissuaded and discouraged use of FMLA (an interference and retaliation violation), and then ultimately terminated Plaintiff for complaints of mishandling of his medical leave and for literally expressing reasons why he needed additional medical leave (claiming his rationale constitutes a threat).

54.    Defendant's actions throughout this Complaint constitute interference and retaliation violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B.    Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to reinstatement to his prior position and benefits, damages for emotional distress, and for pain and suffering);

D.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.     Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: March 8, 2018

# Exhibit A

DEA#

℞

**Abel A. Gonzalez, M.D.**
2299 Brodhead Rd. Suite N
Bethlehem, PA 18020

Tel: (610) 882-2052                              Fax: (610) 882-2054

Name: _____ Age: _____

Address: _____

SECURITY FEATURES ON BACK    Date: 4/28/17

℞ To Whom it May Concern

See to medical
reasons, Ms. Joseph
Bellomo is advised
to stay off from
work until further
notice.

REFILL _____ TIMES

☐ LABEL

SUBSTITUTION PERMISSIBLE

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED,
THE PRESCRIBER MUST HAND WRITE "**BRAND NECESSARY**"
OR "**BRAND MEDICALLY NECESSARY**" IN THE SPACE BELOW.

# Exhibit B



Abel A. Gonzalez, M.D.
2299 Brodhead Rd. Suite N
Bethlehem, PA 18020

(610) 882-2052                    Fax: (610) 882-2054

Rx  To whom it may
Concern:

Due to medical reasons
Mr. Joseph Bellomo
is released to
return to work on
5/22/17.

SUBSTITUTION PERMISSIBLE

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED,
THE PRESCRIBER MUST HAND WRITE "BRAND NECESSARY"
OR "BRAND MEDICALLY NECESSARY" IN THE SPACE BELOW.

5/21/17

# Exhibit C

DEA#

**Abel A. Gonzalez, M.D.**
2299 Brodhead Rd Suite N
Bethlehem, PA 18020

Tel: (610) 882-2052                Fax: (610) 882-2054

Name _____ Age ____

Address _____

SECURITY FEATURES ON BACK        Date: _____

Rx   Michelle D. Cechocki
     Director, Human Resources

     Mr. Joseph Bellomo
     (SSO) 21/617 have been
     advised to stay off from
     work from 5/01/14 till 5/26/17
     He is released to return
     to work, full deety,
     effective 5/26/17

REFILL ____ TIMES _____

☐ LABEL

SUBSTITUTION PERMISSIBLE
IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED,
THE PRESCRIBER MUST HAND WRITE "BRAND NECESSARY",
OR "BRAND MEDICALLY NECESSARY" IN THE SPACE BELOW.

# Exhibit D



**Abel A. Gonzalez, MD**
Diplomate, American Board of Psychiatry and Neurology
2299 Brodhead Road • Bethlehem, PA 18020 • 610-882-2052 • FAX 610-882-2054

# PointeNorth
## WELLNESS CENTER

June 1, 2017.

Michelle D. Cichocki
Director, Human Resources

Re: Joseph Bellomo

Mr. Joseph Bellomo is a patient under my care. Due to medical reasons and as part of his treatment, Mr. Bellomo have been advised to stay off from work from May 1, 2017 till May 26, 2017. He is released to return to work, full duty, and with no restrictions, effective May 26, '17.

Sincerely,

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| Joseph Bellomo | : | CIVIL ACTION |
| v. | : |  |
| City of Bethlehem | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.           ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X )

| | | |
|---|---|---|
| 3/8/2018 | _[signature]_ | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 7 Carney Road, Kresgeville, PA 18333

Address of Defendant: 10 East Church Street, Bethlehem, PA 18018

Place of Accident, Incident or Transaction: Defendant's place of business
_____(Use Reverse Side For Additional Space)_____

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No☒

Does this case involve multidistrict litigation possibilities?    Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
    Yes☐  No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
    Yes☐  No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
    Yes☐  No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
    Yes☐  No☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Ari R. Karpf _____, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 3/8/2018 _____  _____Attorney-at-Law_____  ARK2484
                                                             Attorney I.D.# 91538

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 3/8/2018 _____  _____Attorney-at-Law_____  ARK2484
                                                             Attorney I.D.# 91538

CIV. 609 (5/2012)

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

BELLOMO, JOSEPH

**(b)** County of Residence of First Listed Plaintiff    Monroe
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square,
Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

### DEFENDANTS

CITY OF BETHLEHEM

County of Residence of First Listed Defendant    Lehigh
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT

- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY

- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS

- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☒ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY

- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR

- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION

- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY

- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS

- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY

- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS

- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES

- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE    3/8/2018

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

[ Print ]    [ Save As... ]    [ Reset ]